Bobbie GOHDE and Rick Gohde, Plaintiffs-Appellants,

v.

MSI INSURANCE COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 01–2121. Submitted on briefs January 13, 2003.—Decided March 4, 2003.*

## 2003 WI App 69

(Also reported in 661 N.W.2d 470.)

† Petition to review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark E. Gilbert* of *Giebel, Gilbert, Williams & Kohl, P.L.L.P.* of Roseville, MN.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joe Thrasher* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake.

A nonparty brief was filed by *Robert L. Jaskulski* of *Domnitz, Mawicke & Goisman, S.C.* of Milwaukee, for The Wisconsin Academy of Trial Lawyers.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. This appeal comes to us on remand from our supreme court. Bobbie and Rick Gohde appealed a summary judgment granted in favor of MSI Insurance Company after the circuit court determined the reducing clause in the Gohdes' underinsured motorist (UIM) policy, issued by MSI, was unambiguous. We summarily affirmed, *Gohde v. MSI Ins. Co.*, No. 01–2121, unpublished slip op. (WI App March 26, 2002). The supreme court summarily reversed and ordered the parties to rebrief in light of its decision in *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223.

¶ 2. On remand, the Gohdes argue the reducing clause in their UIM coverage is ambiguous under *Schmitz*'s standards and therefore is unenforceable. We agree and reverse the circuit court's judgment.

## BACKGROUND

¶ 3. In November 1996, the Gohdes were injured in an automobile accident in Chetek when Jamie Lemke lost control of her vehicle and struck the Gohdes' automobile. Several passengers in Lemke's vehicle were also injured. The Gohdes sued Lemke, and the parties agreed Lemke was 100% causally negligent. Lemke's two State Farm liability policies had limits of $50,000 per person and $100,000 per accident. State Farm paid these limits in varying amounts to the injured parties; Bobbie received $100,000 and Rick, $35,000. Bobbie's stipulated damages, however, were $200,000 and Rick's were $135,000.

¶ 4. The Gohdes sought to recover the difference between their recovery from Lemke and their actual damages under their MSI issued UIM policy. The UIM policy provides $100,000 per person and $300,000 per accident limits. Prior to summary judgment, MSI paid

Rick $65,000 and claimed it owed no more to Rick and nothing to Bobbie because of a reducing clause in the UIM policy. The parties filed cross-motions for summary judgment. The Gohdes maintained the reducing clause was ambiguous and unenforceable and, therefore, MSI should pay Bobbie $100,000 and Rick an additional $35,000. MSI argued the reducing clause was unambiguous and claimed it paid all it was obligated to under the policy.

¶ 5. The trial court agreed with MSI and the Gohdes appealed. We summarily affirmed, based on our decision in *Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, 240 Wis. 2d 65, 622 N.W.2d 457. In *Sukala*, we held a reducing clause that complied with WIS. STAT. § 632.32(5)(i) was valid, enforceable and could not be deemed illusory. *See id.* at ¶¶ 16–19. We affirmed because the MSI reducing clause complied with this statute. *Gohde*, No. 01–2121, unpublished slip op. at 2.

¶ 6. After our summary affirmance, the supreme court decided *Schmitz*. There, the court determined it was not enough for a reducing clause to comply with WIS. STAT. § 632.32(5)(i), but rather the clause's effects must be "crystal clear in the context of the whole policy." *Schmitz*, 2002 WI 98 at ¶¶ 46–49. Subsequently, the supreme court granted the Gohdes' petition for review and summarily reversed and remanded for further consideration in light of *Schmitz*.

## DISCUSSION

¶ 7. We review a trial court's grant of summary judgment de novo, using the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A party is entitled to

summary judgment if there are no disputed issues of fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). The construction or interpretation of an insurance policy is a question of law we review de novo. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 636, 586 N.W.2d 863 (1998). If the language in a policy is unambiguous, we must not rewrite it by construction. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990). Words or phrases are ambiguous if they are susceptible to two or more reasonable interpretations. *Id.* To construe ambiguous language, we attempt to determine what a reasonable person in the insured's position would have understood the policy's language to mean. *Schmitz*, 2002 WI 98 at ¶ 51. Our interpretation of ambiguous language should advance the insured's reasonable expectation of coverage. *Id.*

¶ 8. WISCONSIN STAT. § 632.32(5)(i)[1] allows insurers

---

[1] WISCONSIN STAT. § 632.32(5)(i) provides:

**Provisions of motor vehicle insurance policies.**

. . . .

**(5)** PERMISSIBLE PROVISIONS.

. . . .

(i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

to reduce their limit of liability in uninsured motorist and UIM coverage by sums payable on behalf of the tortfeasor, by worker's compensation or disability benefits laws. Reducing clauses are enforceable if "the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 33, 236 Wis. 2d 113, 613 N.W.2d 557 (*Dowhower I*). Although a reducing clause may comply with the statute's language, the clause may still be unenforceable if its effect is not "crystal clear in the context of the whole policy." *Schmitz*, 2002 WI 98 at ¶ 46. If the coverage provided is misleading and unclear, the policy is ambiguous and the reducing clause is unenforceable. *Id.* at ¶ 49.

¶ 9. The Gohdes' policy is nineteen pages and consists of a title page, an index, the declarations, and the terms of coverage. In addition, before and after the declarations page are two separate endorsements unrelated to UIM coverage. The bottom of the title page reads, "READ YOUR POLICY CAREFULLY. This policy is a legal contract between you and us. It is written in 'easy to read and understand' language." The index follows the title page. The index lists the Uninsured Motorist and UIM coverage in Part C of the policy, beginning on page six. The declarations state the UIM coverage limits are $100,000 for each person and $300,000 for each accident. Part C of the policy begins on page six and starts with the UM coverage. The UIM coverage begins on page eight.

¶ 10. The UIM limits of liability and the reducing clause are on page nine:

> The limit of liability shown in the Declarations for "each person" is our maximum limit of liability for all damages for bodily injury to any one person. The limit

of liability shown for "each accident" is our maximum limit for all damages to two or more persons in the same accident.

This is the most we will pay regardless of the number of insureds, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident.

The limit of liability shall be reduced by:

1. all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy, and

2. all sums paid or payable because of the bodily injury under any workers' compensation, disability benefits or any similar law.

Any payment under this coverage to or for an insured will reduce any amount that person is entitled to recover under the Liability Coverage of this policy.

In no event will an insured be entitled to recover duplicate payment for the same element of loss.

¶ 11. The Gohdes and MSI make a number of arguments why the policy is or is not ambiguous or coverage illusory. Not surprisingly, most of these claims focus on the *Schmitz* policy. In *Schmitz*, the court invalidated the reducing clause because although it complied with Wis. Stat. § 632.32(5)(i), it was ambiguous within the context of the whole policy. *Id.* at ¶ 61. Similarly, there is no dispute here that the reducing clause complies with § 632.32(5)(i). Our question then becomes whether the clause is ambiguous within the policy. We conclude it is.

¶ 12. Both parties compare the policy to the one in *Schmitz* and take a similar approach to the *Schmitz*

court in their analyses. The *Schmitz* court examined the whole policy, tracing the route the insured needs to take from the declarations through the UIM section to the endorsement containing the reducing clause. *Id.* at ¶¶ 62–66. After doing this, the court concluded the policy was organizationally complex and plainly contradictory and thus did not establish that the insured was purchasing a fixed level of UIM coverage arrived at by combining payments from all sources. *Id.* at ¶¶ 72, 75.

¶ 13. The Gohdes' policy does not suffer from the same organizational complexity as the *Schmitz* policy. In *Schmitz*, the UIM coverage was not referenced in the policy's "quick reference sheet" or its declarations. *Id.* at ¶¶ 62–63. The UIM provisions were located on page twenty-three of the policy and the reducing clause was in a separate endorsement on page twenty-eight. *Id.* at ¶ 57–59. Here, however, UIM coverage is referenced in the declarations and the index. Further, the reducing clause is located within the UIM provisions and is found immediately following the limit of liability it modifies.

¶ 14. Most of the Gohdes' arguments then focus on what they consider contradictions in the policy's UIM coverage. The Gohdes argue the declarations page contradicts other parts of the policy because it never mentions that the UIM limits are subject to a reducing clause and are virtually never obtainable. They make a similar argument about the policy's index. Finally, they contend the "limits of liability" section of the UIM coverage contradicts the reducing clause because the former implies the limits in the declaration are attainable while the reducing clause does not. This inconsistency, the Gohdes contend, violates *Schmitz*'s "crystal clear" requirement.

¶ 15. Neither the declarations nor the index mention that the UIM coverage is subject to a reducing

clause. MSI, however, contends this does not matter because we should construe insurance policies in their entirety, *see Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 562, 278 N.W.2d 857 (1979), and because it would be impractical to refer to every provision limiting liability in the declarations. Nonetheless, we conclude the fact the declarations do not refer to the reducing clause is relevant.

¶ 16. In Justice Bradley's concurrence in *Dowhower I*, she noted a reasonable insured often only looks to the declarations to verify they have been provided with the coverage for which they have contracted. *Dowhower I*, 2000 WI 73 at ¶ 41 (Bradley, J., concurring). The *Dowhower I* court remanded for a determination whether the policy was ambiguous. The trial court determined it was, and we recently affirmed that decision. *Dowhower v. Marquez* (*Dowhower II*), 2003 WI App 23, No. 01–1347. There, we noted, as Justice Bradley did, the *Dowhower* "Declarations page creates an illusion of coverage because it misrepresents West Bend's liability as $50,000, when in reality the insurer will rarely, if ever, disburse the full amount by virtue of the reducing clause found elsewhere in its policy." *Dowhower II*, 2003 WI App 23 at ¶ 16. In addition, *Schmitz* emphasized that neither the declarations page in that policy, nor the schedule that listed the amounts of UIM coverage, mentioned a reducing clause. *Schmitz*, 2002 WI 98 at ¶¶ 62, 65.

¶ 17. Both *Schmitz* and *Dowhower II* make clear that the lack of a reference to the reducing clause in the declarations is a factor to consider when examining a UIM policy containing a reducing clause. While we agree with MSI it would be impractical to refer to every limit of liability in the declarations, a reducing clause is not a typical limit of liability. In the UIM context,

reducing clauses practically guarantee the stated limits will never be fully paid. As a result, Wisconsin courts generally voided reducing clauses as providing illusory coverage and being against public policy before the enactment of Wɪѕ. Sᴛᴀᴛ. § 632.32(5)(i). *See, e.g., Kuhn v. Allstate Ins. Co.*, 181 Wis. 2d 453, 463, 510 N.W.2d 826 (Ct. App. 1993), *aff'd,* 193 Wis. 2d 50, 532 N.W.2d 124 (1995). After the legislature authorized reducing clauses, the supreme court still required they be "crystal clear" within the context of the entire policy. Based on *Schmitz* and *Dowhower II*, we determine it is relevant whether the declarations mention the reducing clause.

¶ 18. We do not agree that the index's failure to mention the reducing clause adds to the confusion quite as much as the declarations. To the extent it would continue to fail to inform the insured the UIM coverage is subject to reduction, it adds to the confusion. While both *Schmitz* and *Dowhower II* place emphasis on the policy's table of contents, it is those tables of contents' failure to even mention UIM coverage that those courts found most relevant. *Schmitz*, 2002 WI 98 at ¶ 63; *Dowhower II*, 2003 WI App 23 at ¶ 18. As noted, the Gohdes' policy's index refers to UIM coverage and easily directs the insured to its terms.

¶ 19. Finally, we address the Gohdes' and amicus's argument that the language found in the policy's limit of liability section directly conflicts with the reducing clause. Specifically, they contend its reference to the declaration's UIM limit of liability being described as "our maximum limit of liability for all damages" and "the most we will pay" gives the impression the full limit found in the declarations is attainable, when it is not because of the reducing clause. We addressed this argument in *Dowhower II*, where we interpreted a

nearly identical limit of liability and reducing clause. *Id.* at ¶ 21. Rejecting the insurers' argument that the limit of liability language was not ambiguous because it contemplated a lower payment than the maximum, we determined the term suggested to a reasonable insured that the maximum limit of coverage was attainable. *Id.*; *see also Schmitz*, 2002 WI 98 at ¶ 65. This language "reinforces the illusion of coverage" because the insurer will rarely, if ever, pay the limit of liability listed in the declarations. *Dowhower II*, 2003 WI App 23 at ¶¶ 16, 21.

¶ 20. We then considered this language with the reducing clause and rejected the insurer's argument that the clause clarified any UIM coverage ambiguity that might exist. *Id.* at ¶ 17. Although the clause itself was unambiguous and complied with WIS. STAT. § 632.32(5)(i), we determined the clause was nonetheless inconsistent with the rest of the policy. *Id.*

¶ 21. Similarly, we conclude MSI's reducing clause conflicts with the limit of liability language immediately preceding it and with the declarations. Admittedly, the Gohdes' policy lacks the complexity we and the supreme court found troubling in *Dowhower II* and *Schmitz*. The provisions of the UIM coverage, however, must still be consistent no matter how easy it is for the insured to find them. Here, the policy's declarations and the limits of liabilities sections lead the insured to believe the limits are obtainable when, in reality, the reducing clause guarantees they will rarely, if ever, be paid by MSI. These conflicting terms are ambiguous and provide illusory coverage and, therefore, we must interpret the policy in favor of the insured.

*By the Court.*—Judgment reversed.